UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 11-62703-CIV-COHN

LAURA MONTGOMERY,

    Plaintiff,

v.

JONATHAN OBERTI, an individual,
ROBERT WALTER ROTHSCHILD, an
individual, GARRET NICHALUS
WITTELS, an individual, and ISLAND
HOTEL COMPANY LIMITED,
a Bahamian company;

    Defendants.

_____/

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, LAURA MONTGOMERY, sues Defendants, JONATHAN OBERTI, ROBERT WALTER ROTHSCHILD, GARRET NICHALUS WITTELS, and ISLAND HOTEL COMPANY LIMITED, a Bahamian company ("Island Hotel"), for damages and alleges as follows:

    1.    This is an action in diversity under 28 U.S.C. § 1332 with damages in excess of Seventy-Five Thousand and No/Dollars ($75,000.00), exclusive of interest and costs.

    2.    Venue is proper in the United States District Court, Southern District of Florida, pursuant to 28 U.S.C. § 1391 and additionally for the reasons stated below.

    3.    This Court has subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1391 and additionally for the reasons stated below.

4. At all times material hereto, Plaintiff, LAURA MONTGOMERY, is and was a citizen of the United States of America and the State of Texas.

5. At all times material hereto, Defendants JONATHAN OBERTI (hereinafter "OBERTI") and GARRETT NICHALUS WITTELS (hereinafter "WITTELS"), were and are citizens of the United States of America and the State of Florida.

6. ROBERT WALTER ROTHSCHILD (hereinafter "ROTHSCHILD") was and is a citizen of the United States of America and the State of New York.

7. At all material times hereto, Defendant ISLAND HOTEL COMPANY LIMITED (hereinafter "ISLAND HOTEL"), is and was a Bahamian company that is also a subsidiary of Kerzner International, Ltd. and Kerzner International Bahamas, Ltd., both Bahamian companies ("Kerzner entities").

8. Defendant Island Hotel, as a subsidiary of the Kerzner entities, is involved in the operations, management, maintenance, supervision, and business practices of the Atlantis Resort in Paradise Island, Bahamas.

9. Defendant Island Hotel is subject to the personal jurisdiction of this Court as demonstrated below.

10. In multiple instances, this Court has held jurisdiction and venue is proper in personal injury and tort related claims. For example:

    a. Kerzner entities had a final judgment entered against it after a trial in Miami-Dade County Circuit Court in the case of *Wagner v. Sun International Hotels Limited, et al*, Case No. 95-19988 (Judge Goldman), which involved a Dade County resident who sued Kerzner for using his modeling photographs

without his permission, and in sending brochures using his photographs to travel agencies in Florida.

b.  Kerzner entities were successfully sued in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, in the cases of *Postell v. Sun International Resorts, Inc.*, Case No. 99-1160 1 CA 05, and *Emery v. Sun International Resorts, et al*, Case No. 99-10892 CA 01. In each of these cases, it was alleged that Kerzner used plaintiffs' modeling photographs without their permission. In each of these cases, Kerzner contested personal jurisdiction over them by the Dade County Court, but later withdrew the objection as memorialized in an Agreed Order dated June 13, 2000, in the *Emery* case. KERZNER has proceeded to file answers and affirmative defenses in both *Emery* and *Postell*.

c.  Kerzner has been sued for using models' photographs without their consent in the cases of *Delvecchio v. Sun International Resorts, Inc., et al.*, Case No. 95-19989 CA 05; *Muenzner v. Sun International Resorts, Inc., et al.*, Case No. 99-11742 CA 04; and *Wilder v. Sun International Resorts, Inc., et al.*, Case No. 99-11716 CA 27. All of these actions were filed in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, and in none of these cases was the "absence" of personal jurisdiction raised as a defense.

d.  Kerzner entities were specifically found to be doing business in the Southern District of Florida in *Meier v. Sun International Hotels, Ltd., et al*, United States Court of Appeals for the 11th Circuit, No. 01-14431, *Sun*

*Trust Bank, Miami, etc., v. Sun International Hotels Limited, et al.*, Case No. 00-3741-Civ-Huck; and *Ward v. Kerzner International Hotels Limited, et al.,* Case Number 03-23087-Civ- Jordan/Brown.

e. Kerzner was sued in the United States District Court for the Southern District of Florida for personal injury by guests of the Atlantis Hotel in the following negligent security (sexual assault) cases: *Doe v. Sun International Hotels Limited, et al.*, Case No. 97-3359-CIV-GOLD (defendant's motion to dismiss for lack of jurisdiction and forum non-conveniens denied) (Sun International is now Kerzner); *Bostrom v. Kerzner, et al.*, Case No. 07-2121 7-CIV-HUCK (settled); and *Larsen v. Kerzner, et al.*, Case No. 08-2203 1-CIV-MORENO/TORRES (settled). In neither the *Bostrum* case nor the *Larsen* case did Kerzner contest the Court's personal jurisdiction over it.

11. Kerzner entities have a website, to-wit: www.atlantis.com containing multiple local (Florida) contacts for properties. All have telephone numbers which are listed at 1000 South Pine Island Road, Plantation, Florida, 33324.

12. Kerzner entities regularly receive mail and correspondence at 1000 South Pine Island Road, Plantation, Florida, 33324.

13. Kerzner entities' officers, employees and supervisors, who regularly work at the Atlantis Resort in Paradise Island, Bahamas, attend meetings at 1000 South Pine Island Road, Plantation, Florida, 33324.

14. Kerzner entities direct potential investors to contact them at 1000 South Pine Island Road, Plantation, Florida, 33324.

15. At all material times, Defendant Island Hotel dictates the standards and practices for the operation of the Atlantis Resort, and monitors, oversees and control the implementation of these standards of operation by Defendant Island Hotel, and its subsidiaries.

16. Kerzner entities either personally or through Kerzner International Resorts, Inc., sell entertainment/travel and vacation packages to persons, including Floridians.

17. Kerzner entities have bank accounts in the State of Florida in its name and from which the direct employees of the Kerzner entities are able to make deposits and write checks against and in payment of various vendors in the United States and Florida for items purchased for use at the Atlantis Resort, e.g., food, china, linens, bedding, etc.

18. Kerzner entities have had bank accounts at the Miami, Florida, branch of City National Bank.

19. On December 19, 2010, Plaintiff LAURA MONTGOMERY arrived as a guest of her female friend's father at the Atlantis Resort, which is owned, operated and/or managed by Defendant Island Hotel.

20. Defendants OBERTI, ROTHSCHILD and WITTELS, were at all times material hereto, guests and/or invitees of the Atlantis Resort, which is owned, operated and/or managed by Defendant Island Hotel.

## ALLEGATIONS AS TO ALL COUNTS

21. On or about the evening of December 19, 2010 and early morning hours of December 20, 2010, Plaintiff LAURA MONTGOMERY and her friend[1] entered The Dragon Lounge bar located within the Atlantis Resort, Nassau, Bahamas.

---

[1] Plaintiff's "friend" is not being identified as she is not a party in this action and was a minor at the time of the assault.

22.     Plaintiff and her friend showed an Atlantis employee working at the entrance of The Dragon Lounge identification cards clearly displaying their respective ages as seventeen (17) years old.

23.     Plaintiff and her friend were allowed to enter the Dragon Lounge, despite the fact that their identification clearly indicated that they were under age. The two were permitted to sit at the bar and were served alcoholic beverages. Plaintiff and her friend were served multiple alcoholic beverages while in the Dragon Lounge but were not asked to furnish identification to any waiters, waitresses or the bartender after initially displaying their identification to the Atlantis employee at the door.

24.     As disclosed by their respective identifications which were presented to the Atlantis employee at the door of the Dragon Lounge, Plaintiff was, at all times material hereto, under the age of eighteen (18), the legal drinking age in the Bahamas.

25.     Plaintiff and her friend ordered approximately three (3) mixed drinks themselves each during their time in the Dragon Lounge, including one lemon drop shot each from the bartender while seated at the bar.

26.     Plaintiff and her friend were preparing to return to their room for the evening at or around 1:30 a.m. on December 20, 2010, when they observed a group of five (5) white males entering the bar from the casino.

27.     One of the five men out of the group came over to Plaintiff and her friend and asked them how old they were. Plaintiff and her friend advised that young man they were seventeen (17) years old. That man then looked in the direction of the other men and told them, "They are too young."

28. Two other young men out of this group came over to the Plaintiff and her friend and asked if they were serious about their ages. Plaintiff and her friend repeated that they were seventeen (17).

29. The male with the long, curly, brown hair with the baseball cap on backwards identified himself initially as "John". Plaintiff now knows that this was WITTELS. WITTELS offered to buy Plaintiff and her friend a drink and they agreed. He asked them what they wanted to drink. Plaintiff and her friend told him they had previously had a lemon drop shot.

30. WITTELS handed glasses, purportedly containing lemon drop shots, to Plaintiff and her friend and they each drank the liquid in those glasses.

31. Shortly after drinking the drinks the men suggested that Plaintiff and her friend come watch them gamble. At that point, the group left The Dragon Lounge.

32. Upon leaving the Dragon Lounge, it was apparent that Plaintiff and her friend had become extremely intoxicated.

33. After gambling for a short time in the hotel casino, two of the young men took the Plaintiff and her friend up to their hotel room located in the Royal Tower

34. While in the hotel room Plaintiff was undressed by at least one of the young men. By this time, there were three of the original five young men in the room. After being left in the center of the room standing naked, she requested a t-shirt to cover herself, which she was provided.

35. Subsequently, two members of the group had vaginal intercourse with Plaintiff and one of the group had her perform oral sex on him. During this time, Plaintiff was semiconscious and was unwilling and effectively unable to consent to these actions due to her level of intoxication. All of the young men in the room were naked.

36. At some point, Plaintiff stumbled to the bathroom where, in an attempt to sober herself, she induced herself to vomit.

37. Shortly thereafter, her friend, still wearing her black dress, also made her way into the bathroom and locked the door behind her.

38. While Plaintiff and her friend were in the bathroom, one of the young men began banging on the bathroom door. He repeatedly yelled at Plaintiff and her friend to get out of the hotel room.

39. When Plaintiff and her friend came out of the bathroom, one of the young men was standing outside the door. He told Plaintiff and her friend to get out of the hotel room.

40. Plaintiff and her friend were then pushed out of the hotel room. During this time, one of the young men threw out Plaintiff's clothing and shoes, along with her friend's purse and sweater. Once Plaintiff and her friend had stepped out into the hallway, the door was slammed shut behind them. Plaintiff was only wearing the t-shirt she had been given.

41. Despite their best efforts, due to their impaired condition, Plaintiff and her friend were unable and incapable of locating their hotel room until some seventy (70) minutes later. Plaintiff and her friend were still very ill. After passing out in their room, Plaintiff and her friend awoke. Plaintiff then telephoned her mother and advised her mother of the events that had occurred.

42. After Plaintiff spoke with her mother, Atlantis hotel security was notified. Hotel security asked whether these events should be reported to the police. Plaintiff stated that she wanted the events reported to the police.

43. Bahamian police arrived and took Plaintiff and her friend to a police station. After waiting at the police station, Plaintiff was asked to meet detectives at a hospital.

44. Plaintiff and her friend met detectives at Doctors Hospital in Nassau.

45. Plaintiff and her friend were each interviewed separately by the detectives and were examined and questioned separately by physicians and nurses.

46. Plaintiff reported to both the detectives and the medical personnel at Doctors Hospital that more than one of the young men she had encountered at the Dragon Lounge had had vaginal intercourse with her and one of the three had made her perform oral sex on him while she was in a semi conscious state in the young men's hotel room.

47. On the following morning, December 21, 2010, Plaintiff was advised that "five young men" had been detained by police.

48. Three of the five young men gave statements admitting that either they or another member of their group had participated in some form of sexual activity involving Plaintiff or her friend, but denying that such activity was without consent.

49. Neither Plaintiff nor her friend ever engaged in any consensual sex acts with any of the young men in the Atlantis hotel room.

## COUNT I
## NEGLIGENCE AS TO KERZNER DEFENDANTS

50. Plaintiff realleges, incorporates by reference, and adopts her allegations set forth in paragraphs 1-49 as though alleged originally herein.

51. At all times material hereto, there existed and does exist the Statute Law of the Bahamas, specifically Chapter 372 Section 22(i), which prohibits establishments such as those owned by the Kerzner entities, and Defendant Island Hotel, from serving alcohol to minors, such as Plaintiff, who was under the age of eighteen (18).

52. Defendant Island Hotel, by and through one or more of its employees and/or agents, violated Statute Laws of the Bahamas Ch. 372 Section 22(i) by selling liquor to a person under the age of eighteen (18), specifically Plaintiff.

53. Statute Laws of the Bahamas Chapter 372 Section 22(1) states in relevant part that it is an offense: "being a licensee, either by himself or his servant, sells intoxicating liquor to any person who is under eighteen years of age..."

54. Defendant Island Hotel, by and through its employees or agents, did in fact knowingly serve alcoholic beverages to Plaintiff on the evening of December 19, 2010, and the early morning hours of December 20, 2010, while Plaintiff and her friend were in The Dragon Lounge of the Atlantis Resort in Nassau, Bahamas.

55. By failing to properly train and supervise its employees, Defendant Island Hotel caused Plaintiff to become intoxicated and, subsequently, sexually assaulted.

56. Defendant Island Hotel was at all times material hereto, responsible for the training, supervision and retention of the employees of The Dragon Lounge and Atlantis Resort.

57. Defendant Island Hotel at all times material hereto, had a duty to adequately train and supervise its employees in order to prevent the hazards and injuries resulting from individuals under the age of eighteen (18) from being served alcoholic drinks in their resort and lounges.

58. Defendant Island Hotel breached the aforementioned duty in one or more of the following ways:

    a. Failing to properly train their employees;

    b. Failing to properly supervise their employees;

      c.      Failing to ensure that their employees follow the Statute Law of the Bahamas, specifically, Chapter 372 Section 22(i). 105. Defendants knew or should have known that failure to properly train and supervise their employees to identify underage minors and prevent them from accessing The Dragon Lounge could result in serious injury to its guests.

59.    As a direct result of the above described acts and omissions of Defendant Island Hotel, Plaintiff became intoxicated and was subsequently sexually assaulted by OBERTI, ROTHSCHILD and WITTELS.

60.    As a direct and proximate result of the above described negligent acts and omissions, Defendant Island Hotel is liable for all damages as follows:

    a.    Bodily injuries and resulting pain and suffering;

    b.    Severe humiliation;

    c.    Severe mental anguish;

    d.    Loss of capacity for the enjoyment of life;

    e.    Expense of hospitalization, medical, rehabilitative, psychiatric and psychological treatment.

61.    The losses are either permanent or continuing in nature and Plaintiff LAURA MONTGOMERY will suffer losses in the future. These damages were caused by the direct and proximate result of the negligence of Defendant Island Hotel.

62.    WHEREFORE, Plaintiff demands a judgment against Defendant Island Hotel Company, Ltd. and demands a trial by jury.

## COUNT II

### SEXUAL BATTERY AGAINST DEFENDANTS ROTHSCHILD, OBERTI, AND WITTELS

63. Plaintiff realleges, incorporates by reference, and adopts her allegations set forth in paragraphs 1-49 as though alleged originally herein.

64. Plaintiff was sexually battered by Defendants ROTHSCHILD, OBERTI and WITTELS.

65. Plaintiff never consented to being sexually battered and/or otherwise injured by Defendants ROTHSCHILD, OBERTI and WITTELS.

66. As a direct and proximate cause of the sexual battery, Plaintiff was injured about her body, suffered physical pain and suffering, mental anguish, humiliation, loss of enjoyment of life, physical disability, impairment, inconvenience in the normal pursuit and pleasures in life, incurred hospitalization, medical, rehabilitative, psychiatric and psychological expenses in the care and treatment of her injuries, and her working ability and earning capacity has been impaired. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future.

67. WHEREFORE, Plaintiff demands a judgment against Defendants ROTHSCHILD, OBERTI and WITTELS, and demands a trial by jury.

## COUNT III

### ASSAULT AGAINST DEFENDANTS ROTHSCHILD, OBERTI AND WITTELS

68. Plaintiff realleges, incorporates by reference, and adopts her allegations set forth in paragraphs 1-49 though alleged originally herein.

69. Plaintiff was assaulted and battered by Defendants ROTHSCHILD, OBERTI and WITTELS.

70. Defendants ROTHSCHILD, OBERTI and WITTELS intended and did cause a harmful and offensive contact with Plaintiff's friend which caused Plaintiff to be in imminent apprehension that Defendants ROTHSCHILD, OBERTI and WITTELS would cause a harmful and offensive contact with Plaintiff, and Defendants ROTHSCHILD, OBERTI and WITTELS had the apparent ability to carry out that harmful and offensive contact with Plaintiff.

71. Plaintiff never consented to being assaulted by the Defendants ROTHSCHILD, OBERTI and WITTELS.

72. As a direct and proximate cause of the assault, Plaintiff was injured about her body, suffered physical pain and suffering, mental anguish, humiliation, loss of enjoyment of life, physical disability, impairment, inconvenience in the normal pursuit and pleasures in life, incurred hospitalization, medical, rehabilitative, psychiatric and psychological expenses in the care and treatment of her injuries, and her working ability and earning capacity has been impaired. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future.

73. WHEREFORE, Plaintiff demands a judgment against Defendants ROTHSCHILD, OBERTI and WITTELS, and demands a trial by jury.

## COUNT IV

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANTS ROTHSCHILD, OBERTI AND WITTELS

74. Plaintiff re-alleges, incorporates by reference, and adopts her allegations set forth in paragraphs 1-49 as though alleged originally herein.

75. The emotional and psychological harm which Plaintiff suffered as a result of the intentional assaults and batteries were completely foreseeable and were an intended consequence of the intentional conduct and actions of Defendants ROTHSCHILD, OBERTI and WITTELS.

76. In intentionally assaulting and battering and/or otherwise injuring Plaintiff, Defendants ROTHSCHILD, OBERTI and WITTELS engaged in intentional behavior that was extreme, shocking and outrageous.

77. As a direct and proximate result of the conduct of Defendants ROTHSCHILD, OBERTI and WITTELS, Plaintiff has suffered severe emotional distress and ongoing psychological injuries.

78. The emotional distress suffered by Plaintiff is unusually extreme and severe and is a direct and intended consequence of Defendants ROTHSCHILD's, OBERTI's and WITTELS' intentional and outrageous conduct.

79. As a direct and proximate cause of Defendants ROTHSCHILD's, OBERTI's and WITTELS' conduct, Plaintiff was injured about her body, suffered physical pain and suffering, mental anguish, humiliation, loss of enjoyment of life, physical disability, impairment, inconvenience in the normal pursuit and pleasures in life, incurred hospitalization, medical, rehabilitative, psychiatric and psychological expenses in the care and treatment of her injuries, and her working ability and earning capacity has been impaired. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future.

80. WHEREFORE, Plaintiff demands a judgment against Defendants ROTHSCHILD, OBERTI and WITTELS, and demands a trial by jury.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

Dated: November 27, 2012.

      Respectfully submitted,

      BRUCE UDOLF, P.A.

      By: /s/ Bruce Udolf _____
          Bruce L. Udolf
          Florida Bar No.:   899933
          3351 N.W. Boca Raton Blvd.
          Boca Raton, FL 33431
          Telephone: (561) 910-6970
          Facsimile (561) 910-6974
          budolf@ulblaw.com

### CERTIFICATE OF SERVICE

    WE HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically using the Court's CM/ECF system on this 27th day of November, 2012 and served electronically to all counsel of record.

      By: /s/ Bruce Udolf_____
          Bruce L. Udolf